UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

NICHOLAS T.[1],           )
           )
        Plaintiff,     )
           )
           )
     v.         )    Case No. 4:20-cv-65
           )
KILOLO KIJAKAZI [2],     )
acting Commissioner of Social Security,   )
           )
        Defendant.   )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Nicholas T., on July 29, 2020.  For the following reasons,

the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Nicholas T., filed an application for Disability Insurance Benefits on

November 20, 2017, alleging a disability onset date of June 30, 2017.  (Tr. 24).   The claim was

denied initially on March 1, 2018, and upon reconsideration on August 28, 2018. (Tr. 24).  On

September 20, 2018, Nicholas T. filed a written request for a hearing pursuant to 20 CFR §

404.929. (Tr. 24).  The hearing was held on June 21, 2019, before Administrative Law Judge

Marc Jones. (Tr. 24).  Vocational Expert (VE) Lanell Hall appeared at the hearing. (Tr. 24).  On

July 11, 2019, the ALJ issued an unfavorable decision. (Tr. 24-35).  Nicholas T. then filed this

petition for judicial review on July 29, 2020.

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case.  He was sued in his capacity as a public officer. On July
9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil
Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Nicholas T. had not engaged in substantial gainful activity since June 30, 2017, the alleged onset date.  (Tr. 26).

At step two, the ALJ determined that Nicholas T. had the following severe impairments: diabetes mellitus, left lower extremity cellulitis, a depressive disorder, and an obese body habitus.  (Tr. 26).  The ALJ found that Nicholas T.'s severe impairments significantly limited his ability to perform basic work activities.  (Tr. 26).  The ALJ also found that Nicholas T. had the nonsevere impairments of atrial fibrillation and hypertension. (Tr. 26).

At step three, the ALJ concluded that Nicholas T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 26-27).  The ALJ also considered whether the severity of Nicholas T.'s mental impairments met or medically equaled the criteria of listing 12.04.  (Tr. 27-28).  The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 27).  The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis.  (Tr. 27).  The ALJ found that Nicholas T. had moderate limitation in understanding, remembering, or applying information; a moderate limitation interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and a mild limitation

adapting or managing himself.  (Tr. 27-28).  Because Nicholas T.'s mental impairments did not

cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the

paragraph B criteria were not satisfied.  (Tr. 28).

After consideration of the entire record, the ALJ then assessed Nicholas T.'s residual

functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) except the
> claimant is limited to occasional balancing, stooping, and crouching.
> The claimant can never climb ramps and stairs, kneel, crawl, or work
> at unprotected heights. The claimant is limited to simple work-
> related decisions and simple, routine tasks with no assembly line
> work or strictly enforced daily production quotas. The claimant can
> occasionally interact with the co-workers, supervisors, and the
> general public. The claimant requires the option to shift position
> every 30 minutes, or alternate between sitting and standing for 1 to
> 2 minutes at a time while remaining on task. The claimant must use
> a cane at all times while walking. The claimant must sit with his left
> leg elevated (approximately 6 inches) underneath his work station.

(Tr. 28-29).  The ALJ explained that in considering Nicholas T.'s symptoms he followed a two-

step process.  (Tr. 29).  First, he determined whether there was an underlying physical or mental

impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique

that reasonably could be expected to produce Nicholas T.'s pain or other symptoms.  (Tr. 29).

Then he evaluated the intensity, persistence, and limiting effects of the symptoms to determine

the extent to which they limited Nicholas T.'s functioning.  (Tr. 29).

After considering the evidence, the ALJ found that Nicholas T.'s medically determinable

impairments reasonably could be expected to cause some of the alleged symptoms. (Tr. 30).

However, the ALJ concluded that Nicholas T.'s statements concerning the intensity, persistence,

and limiting effects of his symptoms were not entirely consistent with the medical evidence and

other evidence in the record.  (Tr. 30).

At step four, the ALJ determined that Nicholas T. had been unable to perform any past relevant work. (Tr. 33).   Considering Nicholas T.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that he could have performed, including touch-up screener (23,000 jobs nationally), document preparer (18,000 jobs nationally), and stuffer (7,800 jobs nationally). (Tr. 34).   The ALJ found that Nicholas T. was not under a disability within the meaning of the Social Security Act from June 30, 2017 through July 11, 2019, the date of the unfavorable decision. (Tr. 34-35).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence").  Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion."  ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability.  **20 C.F.R. § 404.1520**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity."  **20 C.F.R. § 404.1520(b)**.  If he is, the claimant is not disabled and the evaluation process is over.  If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities."  **20 C.F.R. § 404.1520(c)**; *see* ***Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.  If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled.  **20 C.F.R. § 404.1520(e)**.  However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such

5

work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see*

***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a

vocational expert's refusal to provide the private market-survey data underlying her opinion

regarding job availability does not categorically preclude the expert's testimony from counting as

"substantial evidence" but, instead, the inquiry is case-by-case).

Nicholas T. has requested that the court remand this matter for additional proceedings. In

his appeal, Nicholas T. broadly argues that the ALJ's decision is defective because it is based on

cherry-picked evidence and lacks an accurate and logical bridge.  More specifically, Nicholas T.

argues that: (1) the ALJ did not properly formulate the RFC; (2) the ALJ did not properly

evaluate Dr. Arshad Malik's opinions; and that (3) the ALJ did not provide a proper assessment

in accordance with SSR 16-3p.

As to Nicholas T's argument regarding the opinions of Dr. Arshad Malik, his treating

physician, he claims that the ALJ erred when he discounted them for being inconsistent with Dr.

Malik's own records as well as others created around the same time.  ALJs have an obligation to

develop the record fully and fairly in order to "build an accurate and logical bridge between the

evidence and the result to afford the claimant meaningful judicial review of the administrative

findings." ***Otis S. v. Saul***, 2019 WL 7669923, at *2 (N.D. Ind. Dec. 19, 2019) *quoting* ***Beardsley***

***v. Colvin***, 758 F.3d 834, 837 (7th Cir. 2014). An ALJ "cannot simply cherry-pick facts

supporting a finding of non-disability while ignoring evidence that points to a disability finding."

***Reinaas v. Saul***, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotes omitted). The Social Security

Administration's previous regulations entitled the opinions of certain physicians to controlling

weight based on their status as a claimant's treating physician, however, the new regulations

have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give

any specific evidentiary weight, including controlling weight, to any medical

opinion(s)…including those from your medical sources"). Instead, ALJs must consider all

medical opinions based on factors set out by the Social Security Administration with

supportability and consistency being the most important factors for the ALJ to discuss. *Kaehr*,

2021 WL 321450 at *3.

Nicolas T. argues that the ALJ discounted Dr. Malik's findings in three functional

capacity evaluations, between 2017 and 2019.  Dr. Malik's 2017 evaluation included that

Nicholas T. could sit for 15 minutes at a time, could stand for five minutes at a time, would need

multiple unscheduled breaks during the workday, must always elevate his legs above the heart

when seated, and would miss work more than four days per month. (Tr. 836-39). The ALJ stated,

and the Commissioner reiterated, that he was "not persuaded" by the first evaluation because it

was inconsistent with Dr. Malik's own records which showed significant post-inpatient

improvement in lower extremity swelling, and that aside from tough and scaly skin on the left

leg, Dr. Malik noted no significant clinical abnormalities. (Tr. 31).  Additionally, the ALJ gave

little weight to this evaluation based on other medical records from around the same time that

showed improvement in Nicholas T.'s condition. (Tr. 30-31).

The court notes that the ALJ failed to point to specific medical records to support his

findings.  Rather he cited to entire exhibits which contain records from multiple appointments

over a three-year period. The Commissioner is more specific in its brief about which page

numbers the ALJ was "most likely referring" to and points to pages 1215, 1217, and 1290 in the

record as inconsistent with Dr. Malik's first assessment.  Pages 1215 and 1217 are notes from a

June 27, 2017 appointment between Nicholas T. and Dr. Malik.  The notes stated that Nicholas

T. was "positive for leg swelling (chronic cellulitis left lower leg improved)" and "left leg ++

with erythema improved." (Tr. 1215, 1217). While Dr. Malik's notes demonstrated that Nicholas T.'s infection and the erythema was improved, at the same visit, Nicholas T.'s legs were still swollen at 2+ and he was instructed to continue present management. (Tr. 1214-19).  In fact, just a month later, Dr. Malik found that Nicholas T. had "difficulty working, unable to walk far due to pain, fatigue and not being able to do [sic] job effectively" and that he "need[ed] to raise and elevate his legs." (Tr. 1207). Nicholas T. argues that while these records demonstrated some improvement in his lower left leg swelling, they did not demonstrate that the swelling had resolved completely or remove the requirement to elevate his legs above his waist.

Next, in support of his finding that Dr. Malik's first evaluation was inconsistent, the ALJ discussed the November 30, 2017 appointment with Dr. Rohit Puranik.  Specifically, he pointed to Dr. Puranik's finding that Nicholas T. had strength in all four extremities. (Tr. 1290). However, during the same appointment, Dr. Puranik found that Nicholas T. "ambulate[d] with difficulty and exhibits guarding and antalgic behavior" and that he "exhibits moderate to severe pain with range of motion maneuvers of the lumbar spine." (Tr. 1289).  *See **Shank v. Comm'r of Soc. Sec.**, 2018 WL 417175, at *6 (N.D. Ind. Jan. 16, 2018) (holding it was improper for the ALJ to reject a medical opinion limiting the claimant to non-continuous standing based on reports of full leg strength as leg strength does not indicate how much pain someone experiences); **Fansler v. Astrue**, 2008 WL 474205, at *7 (N.D. Ind. Feb. 19, 2008) (rejecting the ALJ's evaluation of a claimant's doctor as unpersuasive where the ALJ "played doctor" by failing to identify "a medical opinion that articulates an individual's muscle strength must be diminished if he is suffering from chronic pain").

Other medical records that the ALJ cited to support his position that the 2017 evaluation was inconsistent included those of Dr. Michele Keller. The ALJ failed to point out what from Dr.

Keller's records made the 2017 evaluation inconsistent, but after a review of her findings, the court finds some of them to be consistent. For example, on November 10, 2017, 18 days before the physical RFC was completed, Dr. Keller noted that Nicholas T. was positive for leg swelling and back pain. (Tr. 630). During the September 28, 2017, Dr. Keller found that Nicolas T. was positive for arthralgias, back pain, and joint swelling. (Tr. 636-37). The ALJ also cited to records from an infectious disease doctor who only saw Nicholas T. prior to his leg infection. (Tr. 1456-90). After the infection was resolved, Nicholas T. still was positive for leg swelling, neurological muscle weakness, chest pain, and shortness of breath. (Tr. 1463-65).

Lastly, to support his inconsistency finding as to the first evaluation, the ALJ singled out excerpts from medical records that appeared to demonstrate that Nicholas T. was discharged from a hospital stay in June 2017 with no limits on his functionality. (Tr.30-31). However, the ALJ failed to mention that Nicholas T.'s discharge instructions said to "[e]levate lower extremity with pillows under the bend of the knee and Achilles' heel for complete elevation of the lower extremity off the bed surface." (Tr. 1240).

As stated above, the ALJ also found Dr. Malik's 2018 evaluation to be unpersuasive based on inconsistences between how Dr. Malik assessed Nicholas T.'s psychological limitations and how Nicolas T. described his symptoms. (Tr. 31). This evaluation is notably similar to Dr. Malik's 2017 evaluation. (Tr. 768-71). It notes that Nicholas T. could not walk more than one block, could sit for only 20 minutes at a time, and that he needed to elevate his legs above his waist at all times. (Tr. 769-70). Dr. Malik's treatment records from the same day he completed the 2018 evaluation stated that Nicholas T. presented with 2+ edema of his left leg and that he was positive for back and joint pain, shortness of breath, and fatigue. (Tr. 762). It also contained Dr. Malik's opinion that Nicholas T. was "unable to walk far, sit long periods due to chronic

9

venous issues along with morbid obesity" which are consistent with the 2018 evaluation findings. (Tr. 765).

The Commissioner again supports the ALJ's rationale by arguing that the 2018 evaluation is undermined by the June 17, 2017 appointment with Dr. Malik. The Commissioner also claims that the ALJ used a July 27, 2017 visit with Dr. Keller as a way to undermine Dr. Malik's leg elevation limitation. As an initial matter, the court finds it troubling that the ALJ would support an inconsistency finding as to the 2018 evaluation with records that were created closer in time to the 2017 evaluation.  Nonetheless, the ALJ also cited to an April 27, 2018 visit with Dr. Keller, 11 days after Dr. Malik completed his 2018 evaluation, and found that Dr. Keller "documented no case, or need for lower extremity elevation." (Tr. 772-84). This basis for finding the 2018 evaluation inconsistent is misleading.  Dr. Keller did not explicitly note that Nicholas T. did not need to elevate his legs.  Rather the topic never was discussed in her appointment notes. In fact, the ALJ did not cite to any explicit medical evidence contradicted Nicholas T.'s need to elevate his legs at or above waist level. The VE testified that if he needed to do so, that would preclude all work.

Lastly, the 2019 evaluation was deemed unpersuasive by the ALJ because it included a requirement for a cane or walker "despite no clinician noting that the claimant presented with a cane and/or walker." (Tr. 32).  The ALJ also stated that the 2019 evaluation included upper extremity limitations that were not supported by the longitudinal record. (Tr. 32). The court notes that the sitting and standing limitations in this evaluation were slightly less restrictive than the prior two.  Dr. Malik assessed that Nicholas T. could not walk one block, could sit for no more than one hour at a time, could stand for 30 minutes, but that he still needed to elevate his legs above his heart. (Tr. 1536-37).  Dr. Malik diagnosed Nicholas T. with chronic, severe

lymphedema, and chronic left leg pain and swelling in both legs. (Tr. 1536).

The ALJ stated, and the Commissioner reiterated, that the persuasiveness of the entire 2019 assessment was eroded by the new requirement of a cane and the inclusion of upper extremity limitations that were not supported by other objective evidence. (Tr. 32). Nicholas T. points to his testimony that he had been using a cane for 4 years and that he used a walker occasionally when his legs got infected. (Tr. 52-53).  In February of 2018, after being admitted to the hospital again due to complications from his chronic cellulitis, Nicholas T. was described as "nonambulatory at baseline", he presented to Franciscan Hospital on October 21, 2018 in a wheelchair, and his vein/pain doctor noted that Nicholas T. consistently "ambulated with difficulty." (Tr. 408, 1348, 1289, 1305). *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (noting that, where the claimant's testimony is supported by some objective medical evidence, the ALJ cannot merely discredit that testimony).

As shown above, the ALJ's decision to discount the findings of Dr. Malik based on inconsistency was premised on cherry-picked facts that seemed to support his decision while leaving out ample evidence that undercut it. This in and of itself warrants remand.

Nicholas T. makes other arguments regarding his subjective symptoms and the RFC. However, because the ALJ erred by discounting Dr. Malik's opinions, the court need not address the additional arguments at this time.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 4th day of August, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge